Good morning, Your Honors, may it please the Court? We're focused here this morning on the motion for judgment on the pleadings. Judgment everyone on that. And from an appellant's standpoint, whether approached from the front end or the back end of the judgment, the judgment on the pleadings should not be permitted to stand in the face of a readily curable defect. The only complaint deficiency supporting the judgment on the pleadings was the absence of a necessary party. A party deemed necessary after the suit was commenced. A party deemed necessary after the scheduling order amendment deadline. Why did you take four months after the decision issued to come in? Well, the decision was on, you're talking about the four months after the Worth decision. After the Worth decision, the motion for reconsideration was not. If you want a personal explanation, there was a mediation scheduled in December. The parties were engaged in heavily discovery exchanges. There were thousands of documents being exchanged. My co-counsel in Ohio had some comments that he wanted to look at, and it just took that much time. But don't attorneys file their papers and then talk. They protect themselves against running of statutes of limitations and so forth by filing their papers and then proceed to discuss. There was no statute of limitations. There was no time factor involved in that four months. That's what this appeal is about. Well, the scheduling order deadline was September 18, 2009, and the Worth decision came out five weeks or six weeks before that. Correct. So, I mean, there was that, right? There was that. You've got a limited time to come in under the scheduling order. Well, you wouldn't come in on the decision itself with a motion for reconsideration pending, because the motion for reconsideration was addressing some of the material elements of how that was going to be applied in the tort context. No, but it was a record decision that, until overturned, was relevant. The court, as I understand it, even took into account the fact that this didn't become a record decision with general circulation until about October of 2009, and commented that, nonetheless, it took another four months to file this motion to amend the scheduling order. The date on the decision is July. That's two different issues. The standard in the Sixth Circuit for doing something beyond the scheduling order, that it could not reasonably be presented before the scheduling order. If there's a motion for reconsideration pending, the mandate has not issued, the decision has not become final to be acted upon. If it has not become final to be acted upon, it is not something you would make a motion on, because it's subject to change. The Sixth Circuit itself did not confirm their ruling on Worth until October 29th, after the motion for reconsideration was denied on September 30th. Therefore, we're talking about this four-month period after the standard for moving after the scheduling order deadline had passed. But the question is diligence. Were you diligent? And the court has said you were not. So you need to supply us something to overcome an express finding that you were not diligent. Well, that's what I'm talking about. We have already met the standard required by the Rule 16 in the comments, and as followed by the Sixth Circuit. The time, the scheduling order deadline is not a factor, because it could not have been reasonably presented within that time frame. So we're not talking about the four months after we've already met the standard for good cause. So we're now taking a double bite at the same rule. We've already met the standard for good cause. Now we're setting a second standard for good cause. We're setting a four-month period. We're setting a time interval, a strictly evaluation time interval, not a prejudice factor, not some other case issue involved here, just that the court did not think that four months was a reasonable time period. Just a simple four-month time period. And why should we overturn that decision? Because that's not an action. On what basis do we overturn that decision? Because it's not an exercise of discretion. It's an arbitrary determination that four months is too long. There's no prejudice factor. The discovery was open. The parties were contemplating acting on the ruling. There was no delay in the trial. There was no reason. Well, there is a prejudice factor. The judge found there was a prejudice factor, a question we review under abuse of discretion. The judge found there was prejudice here. Which judge? The district court judge. Okay. Well, the district court judge is talking about prejudice because at the time the district court judge is ruling on the objections, the discovery had closed because that time had passed. We're talking about the court process that took enough time to reach that point where the judge says, well, at this point, now that it's July or August, now I have to change the scheduling order. But when the motion was pending and the prejudice was an issue in February, March, there was no prejudice. If the motion was decided properly and the time was not interjected as a factor and the- I'm sorry. Are we talking about 2010? I've lost track. I've lost track of what time period we're looking at. The scheduling order was 2009, September 18th. That was the deadline. Yes. Right? We're talking about 2010. So we're talking about discovery, the discovery took place after? No, there was ongoing discovery. Okay. Discovery did not close until July, June 15th or July 15th, I forget which one. So we're filing the motion in February. We've got four or five months of discovery open. And the motion then acted upon and not been rejected because of the time interval, but just been accepted because there were good grounds. The decision would have been made, the parties would have been added, and there was plenty of discovery time to address that change. The fact that the district court now is ruling upon objections to the magistrate order in July after the discovery is closed and makes a comment that now it's too late, well, the now is not a factor that's within plaintiff's control. That's not a prejudice factor that should be considered. The point of this four-month period is that it's an arbitrary number. There was no reason at the time the four-month period was addressed by the magistrate judge that it should have been factored in there. There was no reason in the case. It didn't affect the case at all. Therefore, when you're talking about exercising discretion, when you're talking about a judge balancing some factors, here there's no factors to balance. The judge just decided that I didn't like four months. Would the judge have liked three months? Would the judge have liked two months? I mean, there's no rhyme or reason why this was picked out as being too long. Well, the court said, and this is back to the diligence point, not the prejudice issue but diligence. The court said, plaintiff fails to explain why it purportedly needed four months to discover, analyze, and act on the worst decision. Then it goes on to say, based on the record, there is no evidence that plaintiff demonstrated the diligence necessary to establish good cause. My point is it doesn't make any difference. Is that wrong? Is there any evidence to show diligence here? It's the judge's view. There's no diligence. No, I'm asking you whether there's any evidence in the record that demonstrates. Yes, there was an explanation. No, we can't both be talking at the same time. My question is whether there's any evidence in the record that plaintiff demonstrated diligence. Is there or is there not? I can't tell you where it is at this point. In one of the reply briefs, there was a discussion of the factors of the pending mediation and the exchange of discovery at the time that the parties were progressing towards trial. That was put before the judge. The rule contemplates that the judge is going to define diligence. The rule does not contain any kind of a guideline as to whether it's six months or two months. This is based on a finding of the judge. The judge has made the finding here. On what basis do we reject it? First off, the four months of delay without any other reason is not in accordance with the Sixth Circuit standards. You have those citations in the blue brief at, I believe, page 41. Secondly, the Supreme Court has just decided in a very similar situation in the Krupski case that a party moving to amend under 15C to add necessary parties that were omitted because of a mistake in identifying the proper parties at the time of filing even. That 133 days is just not a factor. This standard under Rule 15 is quite different from the standard under Rule 16, is it not? It is. It's a much more lenient standard under Rule 15. You've got a problem with respect to the request to amend the scheduling order, and that confronts the higher standard of Rule 16. And the Rule 16 standard has been addressed by the Sixth Circuit that four months, and it was in Moore and the city of Paducah versus Moore. That four months, if that's all there is, is not enough. It's just that's all that the court had. It was just this court's idea that it doesn't affect the discovery. It doesn't affect my trial plan. It doesn't affect my case progression. I just felt like four months. That's not an exercise of discretion. Well, he did find prejudice. The magistrate judge was the one who was ruling on the motion. The magistrate is the one that was talking about this four-month period in the first place. There was no prejudice, because the magistrate judge says, well, I'm going to think that there might be prejudice, because the defendant might not have had to file their motion for judgment on the pleadings. Even the district judge didn't buy that. So when you're talking about, okay, now, by the time the process comes to me and it's July, well, now there's prejudice, because it just took that much time for the court process to come. So I'm going to burden plaintiff with my conclusion that the court process has now injected an element of prejudice in its case. That's unfair to plaintiff. Do you want to save some rebuttal time, Mr. Stahl? Thank you, Your Honor. Thank you. Brunton? May it please the court. My name is Greg Brunton, Counsel for Appellees, Stanley Law Group, LLP, and we would obviously submit that Judge Frost did not abuse his discretion in this case. Where's the prejudice? Well, I think as the panel has pointed out, the prejudice is a secondary consideration, but we do think there's significant . . . There's got to be prejudice, doesn't there? It's a factor in 16, Your Honor. Yes, that's correct. Yes, and where is it? I mean, the discovery remained open. Even after the four-month delay or seven-month delay, whatever it was, you still had another four months to go ahead with discovery, to pose everybody. What's the prejudice here? By this point in the proceedings, there had been depositions of lay witness. And you have four months to go back and ask them one more question. That's what it amounts to. Ask them two more questions. You didn't have to start over. You just had to ask another question or two. Respectfully, I think we would have had to start over with experts. The parties by this time had engaged experts. We had . . . Well, you had four months to do it. Can you do it in four months? Realistically, perhaps. And I say that genuinely, perhaps. But we would have . . . I'm afraid if I were your district judge and I gave you four months, it wouldn't be perhaps, would it? You would do it. At significant cost and possibility to do it to the parties. It's hard for me to sit here and argue anything's impossible. What is the expert? I understand that if you name the people, you're going to have to take depositions about what their particular input was to the particular opinions that are at issue. What's the expert testimony here that would change or be driven by this? All of the expert testimony to date and all of the expert reports at that point had never addressed, and somewhat ironically, even to this day, plaintiff's appellants have never supplied an expert report that said, Jeff Stanley was negligent because he did this. Eric Gein was negligent because he did this. Wes Ehrlich was negligent because he did this. That process would have had to start over. Plaintiff appellants would have had to get a whole new expert, or at least a whole new expert opinion, and then issue a report to us. A whole new expert disclosure report date would have had to been generated by the court. And then they'd have had to say, Jeff Stanley's negligent because of this reason. Eric Gein for this reason. Wes Ehrlich for this reason. And then my experts, my two experts would have had to go. But weren't the same questions the kind of questions that were asked already? And the only questions remaining is, okay, with respect to the negligence of failing to do this, that, or the other that was discussed before, which of the named parties was responsible for that? Sure. I mean, you're right that the issues are related, Your Honor. I'm not sitting here saying the issues are totally unrelated, but it is a significant difference for an expert to say. It's a little more than just related. It all stems from the same conduct. It's one question, isn't it? Is there vicarious liability? Yes or no? What's your opinion? Respectfully, I think that the issue would have been, okay, Mr. Expert, you've generally opined that you think the 131 patent should have come out. The analysis should have been different on the 131 patent, for example. Okay, tell us, was Wes Ehrling negligent in that opinion? Was Jeff Stanley negligent in his supervision of Wes Ehrling? Was Eric Guyon negligent in his supervision? And that is a significant difference. And I realize the court doesn't have the expert opinions in front of you, but it would have been completely different than what we had. Well, I guess what I'm missing is the complaint alleges, even though the complaint only names the law group, even though they're the only named defendant, the complaint is defendant, Stanley Law Group, through its members, including Stanley, Guyon, and Egg. I mean, they were the only named people in the complaint whose actions, you were alleging, made the law group. So I can understand you would need additional information by each of them to determine what their particular role necessarily was. But I'm having a harder time thinking what goes beyond that, that you would need expert reports on. You would need expert reports to determine who, which of those attorneys was liable and when. At that point, all of the expert testimony, or I should say expert reports, because expert depositions had not been taken. But the expert reports at that point had not even touched the issue of the individual liability and actions of any particular attorney. And this is significant for other reasons, because one of the reasons this is significant is because the person who is the primary attorney that was involved in the underlying actions was also still a non-party and was never even asked to be brought into the amended complaint, which is Wes Ailey. No, I appreciate it. Do you agree with Mr. Stahl's comments with respect to the timing? If I understood him correctly, when they filed this in February, if the judge had decided at the same day, as opposed to three or four months down the road, that all of the prejudice that the district court judge used when he ultimately decided this question happened between the time the motion was filed and the time of his decision? No, I don't, for a couple reasons. One is, first of all, it is impractical to think a court rules instantaneously on anything. I mean, that is an impractical imposition to place on any trial judge to say I'm filing my motion on February. No, but I didn't ask about that. I asked about just what happened factually. What happened? If there was discovery preceding the February 10th deadline, if that's the prejudice he meant, or when he talked about the prejudice to the parties with regard to expert reports, ya-da-da, that that was all discovery that occurred after the filing on February 15th, pretty much after the filing on February 15th. I think that my recollection is, Your Honor, and I'm going by memory here, my recollection is the depositions and, I believe, plaintiff's expert report were generated prior to the motion to file the amended complaint, but I'm going by memory, so I apologize. That's the best of my recollection. I think what happened was we were doing depositions up to the February date, but don't hold me to that, Your Honor, because I'm going by memory on the dates of the depositions. One of the things I'd like to point out to the court, because we constantly talk about this four-month time window, and that is really putting this case, giving every single benefit of the doubt to the appellant in this case. The Wirth decision was a published decision in the Southern District of Ohio at the trial court level in July of 2007. We have always maintained and maintained at the trial court level and maintain here that this four-month window is a little bit of a, well, it's certainly giving them every benefit of the doubt. They filed this case in the Southern District of Ohio. Back in 2007, the Southern District of Ohio was on record saying, under Ohio law, you must name the individual attorneys. So this idea that this was just a four-month time window, in our view, is really giving every stretch and benefit of the doubt to the plaintiff. This case was pending in the Southern District of Ohio with a published decision in 2007. So in terms of diligence, when we're talking about the diligence of a party, it's not really just a four-month window here. Did you move to dismiss this case because they improperly failed to name the parties? I'm sorry, Your Honor? Did you move to dismiss the case on that basis? I'm sorry, I guess I don't understand. The motion for judgment on the pleadings was our motion. What was that motion? I'm sorry? That was their motion. We filed a motion for judgment on the pleadings saying yes. Yes. Did you cite the fact that they failed to do that, and did you file that before the Wirth decision ultimately came down in 2009? No, Your Honor, no, no. We filed it in response to their motion to amend the complaint. I mean, I guess getting into a little bit of a field maybe of what the court's considering, but our view of it at the time was, as the court knows, we filed a motion for a Markman hearing. Our view was we were going to go in with a motion for summary judgment and raise the procedural aspects of the case, which were raised under Wirth, as well as what we felt were patent issues that would address the substance, and that when they filed their motion to amend the pleadings, that's kind of brought everything to a head earlier than when we intended to file a motion on the Wirth issue. As I understand the court's ruling on prejudice, the statement is that any amendment at this stage would impact legal theories and defenses and would necessitate further extensions of discovery and expert deadlines, and I see nothing beyond that, simply those conclusory statements. Is there anything else that I'm missing? Well, I think that's probably it, Your Honor. I think it's probably the idea that the case schedule would be predicted. Obviously, there's prejudice. Isn't it a little bit odd that there was no consideration of the extent to which there might be additional discovery needed or the extent to which there might be additional expert testimony given the nature of this case? I think Judge Frost's decision, Your Honor, is clearly within his discretion. He doesn't make, I think, what could be considered a clearly erroneous decision of fact. He doesn't misapply the law. There is, I think, no factual dispute here that the expert reports and discovery would have changed, the case schedule would have changed. But it may have been in this case that all of the depositions that were taken addressed all of the actual facts as to what went on, and the only thing that would be needed was another day of depositions just to say, okay, what did you do and what did you do and what did you do? This isn't a very difficult case. They advised there was no infringement, and there was infringement. What is the complexity of this? Well, respectfully, Your Honor, we feel very strongly there was no infringement, just the 131 patent we believe strongly was not infringed. But the difficulty would be there were numerous issues in terms of who was doing searches, for example, on the 438. The design patent issue. But those things had to have been covered a bit, right? Respectfully, Your Honor, they really were not, which is part of our point. That's part of our point. Now, I'm starting to wonder if you were diligent as well. I mean, these are the elemental issues. You had discovery for some time. Well, we knew the facts, Your Honor, about the case in terms of who did what and who did what search and what time. Those facts were discovered. But in terms of an expert opinion saying, for example, Jeff Stanley has a duty to do such and such search to come up with the 438 or whether Wes Aling did and why they had to do it is an entirely different issue than just a generalized expert report saying, I think those design patents should have been found. Well, okay, Mr. Expert, who should have found them? When? Why? Which attorney? Where did that duty come from for that individual attorney? It's a game changer, which is really why the Worth decision is what it is, because it does change the game dramatically for lawyers and doctors when attorneys who are suing the lawyers and doctors can't just say, hospital was negligent, I think the disease should have been found, or lawyer was negligent, I think the patent should be found. But isn't it really the same? You're saying to the firm, you know, did you have a duty to do this, that, or the other? Or, you know, was the search that your firm conducted sufficient? Did you overlook something? Was your opinion negligent in any respect? And all of those questions would then simply be followed up with a question of, okay, what role did you play in writing the report, in conducting the search? Is it plugging in? It seems to me that's not a big leap. I guess I would respectfully disagree with that assertion. I think it's a significant leap for a plaintiff to say, generally, Stanley Law Group was negligent because this opinion wasn't found, and then for an expert to say, well, I think Wes Ehrlig, on this and this date, based upon this and this communication with the client, should have done this and this search. I do. I feel that's incredibly significant and changes legal malpractice and doctor malpractice and insert any other kind of malpractice case you want. I think it changes the game dramatically, which is why, on my side of the fence, I always see these generalized allegations and why I think the Ohio Supreme Court got, candidly, kind of tired of it, because it does change the game dramatically to say, you were negligent on this date as opposed to corporate law firm or corporate hospital. So you don't have to say to a law firm, the law firm was negligent on this date because you failed to do this, that, or the other? Correct. I think that's the law of Ohio. Exactly, Your Honor. You have to say, John Smith, attorney, was negligent on that date. That's exactly, right now, the law in Ohio. That has to be established. The liability of the agent has to be established. And we would have started over. I shouldn't say started over. I recognize discovery had been done. We've had to redo discovery and redo experts to establish the liability. What I'm getting at is, before the law changed and when the suit was originally filed against the law firm, weren't you asking, did you do this on this date? Did you fail to do this on that date? Did you fail to look at this, that, and the other? All the specific questions you just mentioned with respect to the individuals, weren't those the same questions that you were directing toward the firm? Sure. I had attorney-client communications on those issues. Of course I did. But I wasn't putting together a plaintiff's case for them and writing their expert reports. I mean, it's their burden to prove. So, of course, was I having attorney-client communications with my clients on those issues? Yes. The answer is yes. But we certainly had no reported theory from plaintiff as to why any particular agent at any particular time was negligent. My time's almost up. I had you reversed with your adversary. So you're right. That was not your burden. But the point I'm trying to make is it seems to me that the same inquiries would have been made during discovery against the firm as would be made against the individuals of necessity, simply because that's what discovery is all about. You're discovering facts, who did what, where, when, how. So the question is, then again, what additional complexity, what additional discovery would have resulted from the naming of the individuals? The additional discovery would have been, one, generating new, completely new expert reports for all the parties that did not touch that issue, and then, frankly, the parties probably having to discuss with their experts, well, now that we have to establish the liability of Jeff Stanley individually or Wes Ehrlich or Eric Guyon. But the duties of the firm would have been different than the duties of each individual member? Can't see how that expert opinion is going to vary much. Respectfully, I think it would because it's not a question of just saying, so-and-so law firm should have done this. It's, you know, it's... I think we have your point. Okay, thank you. Mr. Stahl? Both Magistrate Judge King and Judge Frost find against you. Doesn't that suggest that there's some lack of diligence and prejudice? Well, Judge Frost just confirmed Judge King's finding, but not on the same basis. Judge King said that the four-month period from October to February was dilatory. Judge Frost, as Justice Lind pointed out, at 821 talks about permitting the proposed amendment at this stage. At this stage is June 30th. That's what I was talking about. It's not at the time when discovery was open. It's not at the time when the motion was pending before Magistrate Judge King. It's at June 30th. Of course, there's a change in timing. I want to ask you a question outside the record, Mr. Stahl. The district judge could well look at this and say, they're accusing their attorney of malpractice because he said there was no infringement, and yet they abandoned his position by settling. So how could there be malpractice in this case when you didn't even really follow your attorney's advice? You didn't pursue this to find out if there was infringement. In the underlying case? I know that's outside the record, but if I were the district judge, I'd be asking those questions, and that might influence my diligence and prejudice findings. I'm prepared to address that, Your Honor, but I can't do it in 41 seconds. Go ahead. We're getting into patent law, and I don't purport to be an expert. We're going into the theory of the case, the request for the markman, and the ultimate defense that the opinion letter reports that the patents are not infringed. Therefore, the issue on the malpractice case is whether or not the patents are infringed. This is a clearance letter. This is an opinion letter. Before we find out, you settle. Well, I'm saying we can't settle because the clearance opinion is addressing the pre-filing, pre-litigation status, gives us an opinion of our product as to whether it's likely to infringe another product. In this case, MAG Instrument Products was the focus. In patent law, as I understand it, the clearance letter only comes into issue after a finding of infringement. The clearance letter is not a factor in finding infringement. It only becomes an issue, an evidentiary issue, in determining willfulness. It doesn't – the fact that there's – no, let me finish. The fact that there's an infringement finding doesn't validate the letter, doesn't invalidate the letter. The clearance opinion is assessed independently by the judge to find out whether it's competent. Competent is whether it goes into the file history and various standards are established for competency. If the judge finds it's competent, it becomes a question as to the pre-litigation state of mind of the party developing the product. Now, this comes into play, and I'm referencing Seagate Technology by the court.  Okay. But the point is you didn't even find out if it infringed or not, and you're accusing them of malpractice for saying it didn't. Well, the standard is not whether it infringed. The standard is whether or not they placed us in a position of unreasonably exposed to being an infringer. All right. I have your answer on that. I'll give you a couple seconds to address anything else because I interrupted you. All right. Just in terms of timing, the expert reports were required early in the case, January, February. They only addressed the issue of whether there was infringement or non-infringement. That was the defense expert. The defense expert just said there was no infringement. It didn't address any of the individual parties. The depositions of the experts were in June or July, as I said. That would have been addressed after the discovery of the parties took place, which was in May. Both plaintiff and defendants were deposed. And the only questions in the depositions, who did what when, all of the issues were addressed. There was nothing. Then the depositions would have been available for the experts to further assess when their depositions were taken. There was no additional steps to be taken in this case required because of a motion to amend by adding the parties individually. I think it's a red herring. And it comes back to the judgment on the pleading on the general engagement agreement itself. Because we're talking about three attorneys that are doing different things, unknowns to plaintiff. It's not plaintiff's burden to determine who was negligent in what particular respect. Final thought? The contract part of the judgment on the pleadings is improper because you